**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JERALD WATLEY, | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION NO. 4:26-cv-3570 |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| HOUSTON INDEPENDENT SCHOOL | § | |
| DISTRICT | § | |
| | § | |
| *Defendant.* | § | |

**<u>PLAINTIFF'S ORIGINAL COMPLAINT</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Jerald Watley, and files this Original Complaint against Defendant Houston Independent School District, alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.001 et seq., and would respectfully show as follows:

**I. PARTIES**

1.    Plaintiff Jerald Watley is an individual residing in Harris County, Texas. At all relevant times, Plaintiff was employed by Defendant Houston Independent School District as a Teacher in Special Education.

2.    Plaintiff is a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102, and the TCHRA, Tex. Lab. Code § 21.002. Plaintiff is also an eligible employee within the meaning of the FMLA, 29 U.S.C. § 2611(2).

3. Defendant Houston Independent School District ("HISD") is a Body Corporate and Politic, and a political subdivision and public school district organized under the laws of the State of Texas, with its principal office at 4400 West 18th Street, Houston, Texas 77092. Defendant is a public agency and is an employer within the meaning of the ADA, the FMLA, and the TCHRA, and employs more than fifteen employees and more than fifty employees within a 75-mile radius. Defendant is also a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Defendant may be served through its Superintendent Mike Miles, or its currently presiding Board President, at the District's headquarters.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, including the FMLA, 29 U.S.C. § 2601 et seq., and the ADA, 42 U.S.C. § 12101 et seq.

5. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1343(3) and 1343(4).

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims under the TCHRA pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District, and Defendant operated within this District at all relevant times.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On or around August 11, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWCCRD"), EEOC Charge No. 460-2025-09155,

arising from the conduct alleged in this Complaint. Plaintiff timely amended that charge on or around September 16, 2025.

9.    On or around February 2, 2026, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff files this action within 90 days of that Notice.

10.    All conditions precedent to the filing of this action have been performed or have occurred.

11.    Plaintiff's FMLA claims are timely under 29 U.S.C. § 2617(c).

## IV. FACTUAL BACKGROUND

12.    Plaintiff has over nine years of experience as an educator with specialized expertise in special education. He began working for HISD on or around August 2022 and performed his duties serving students receiving inclusion and dyslexia services.

13.    On or around October 2024, Plaintiff was diagnosed with cancer. Plaintiff's cancer required hospitalization, ongoing treatment at a specialized cancer treatment center, and continuing follow-up throughout the relevant period.

14.    Plaintiff's cancer and the treatment required to address it substantially limited Plaintiff in one or more major life activities and bodily functions, including but not limited to working, caring for himself, concentrating, and the operation of his immune, hemic, and lymphatic systems and normal cell growth, within the meaning of 42 U.S.C. § 12102(2)(A)–(B). Plaintiff's cancer also constituted a serious health condition within the meaning of the FMLA, 29 U.S.C. § 2611(11).

15.    Among Plaintiff's known and communicated functional limitations during the relevant period were a compromised immune system, increased susceptibility to infection, fatigue, and the need to limit close-proximity exposure to large groups of students.

16. At the start of the 2024–2025 school year, Plaintiff was initially assigned to Kennedy Elementary School under Principal Haydee Cavazos and Assistant Principal Maria Garza, from on or around the start of the school year in August 2024 through on or around October 3, 2024.

17. During his assignment to Kennedy, Plaintiff experienced repeated public criticism, exclusion from decisions affecting his role, excessive scrutiny, undermining of his authority as Department Chair, and unwarranted changes to his responsibilities. On or around September 19, 2024, during a campus staff meeting, Principal Cavazos announced to the entire staff that, due to low enrollment, she would likely lose a special education teacher and identified Plaintiff by name.

18. On or around September 30, 2024, Plaintiff submitted a formal internal complaint to Josue Borrego, Senior Executive Director for the North Division, regarding the treatment Plaintiff was subjected to at Kennedy Elementary, and he sought intervention. On or around October 1, 2024, Mr. Borrego responded and directed Plaintiff to address his concerns to Bettina McKinney, the Executive Director and direct supervisor of Principal Cavazos. That same day, Plaintiff met with Ms. McKinney regarding the concerns raised in his complaint.

19. On or around early October 2024, Plaintiff's medical condition required hospitalization. Plaintiff was approved for continuous FMLA leave for the period from around October 7, 2024, through approximately January 17, 2025. FMLA approval was communicated to the campus on or around October 10, 2024, including by email forwarded to Ms. McKinney.

20. While Plaintiff was hospitalized and on approved FMLA leave, HISD personnel contacted Plaintiff on or around October 22, 2024, and on or around October 30, 2024, regarding the

return of district-issued equipment, despite Defendant's knowledge of Plaintiff's hospitalization and approved FMLA status.

21.    During Plaintiff's leave, HISD reassigned Plaintiff from Kennedy Elementary School to Osborne Elementary School. Plaintiff was not directly notified of the reassignment at the time it occurred and learned of the reassignment indirectly from colleagues.

22.    On or around November 7, 2024, while Plaintiff remained on approved FMLA leave, HISD provided Plaintiff with information regarding the Americans with Disabilities Act and the process for requesting accommodations.

23.    On or around December 16, 2024, prior to the formal end of his approved continuous FMLA leave period, Plaintiff returned to work and reported to Osborne Elementary School. That same day, Plaintiff met with Principal Dimandja and disclosed his medical condition. Principal Dimandja acknowledged Plaintiff's hospitalization and expressed that she was glad he had been released from the hospital.

24.    In or around December 2024, Plaintiff also disclosed his medical condition, his compromised immune system, and his susceptibility to infection to Department Chair Ms. Kasoga. Throughout January 2025, Plaintiff remained in communication with Osborne leadership regarding his ongoing treatment, his compromised immune system, fatigue, and his need to limit close-proximity exposure to students consistent with his health risks.

25.    Around December 19, 2024, within Plaintiff's first week back from FMLA leave, and on or around the third day after he received his teaching schedule, Plaintiff received his first post-return SPOT observation from his appraiser, Ms. Colion-Hernandez. The observation initially resulted in a score of 7 out of 15. The following day, after Ms. Colion-Hernandez

acknowledged that Plaintiff had only just received his schedule and that he did not yet have access to the necessary files and documentation, the score was revised to 9 out of 15.

26. Around January 16, 2025, Plaintiff filed for intermittent FMLA leave. On or around January 22, 2025, Plaintiff's leave was extended to on or around June 5, 2025.

27. Within approximately three weeks of Plaintiff's intermittent-FMLA filing, and against the backdrop of Plaintiff's continuing communications regarding his medical limitations, Plaintiff received a series of SPOT observations in close succession by Ms. Colion-Hernandez:

   a. On or around January 17, 2025, Plaintiff received a SPOT observation that resulted in a score of 12 out of 15;

   b. On or around January 23, 2025, the day after Plaintiff's FMLA extension was approved, Plaintiff received a SPOT observation that resulted in a score of 11 out of 15;

   c. On or around February 5, 2025, after Plaintiff had received two new schedules within approximately ten days of his intermittent-FMLA filing, Plaintiff received a SPOT observation that resulted in a score of 9 out of 15; and

   d. On or around February 20, 2025, within approximately 48 hours of Plaintiff receiving yet another new schedule, Plaintiff received a SPOT observation that resulted in a score of 8 out of 15.

28. Around January 27, 2025, and around February 3, 2025, Plaintiff received successive new instructional schedules that increased his student-facing responsibilities and exposure, despite Plaintiff's known compromised immune system.

29. On or around January 18, 2025, days after Plaintiff's intermittent-FMLA filing and amid continuing concerns regarding his workload, exposure, and medical limitations, Plaintiff required emergency hospitalization. On or around February 28, 2025, Plaintiff again required emergency hospitalization.

30. On or around January 31, 2025, Defendant's ADA office emailed Plaintiff regarding ADA accommodation-request information and copied Principal Dimandja. That same day, Principal Dimandja informed Plaintiff that she had contacted HR Leave Administration regarding his medical situation. These communications, together with Plaintiff's prior disclosures and Defendant's actual notice of Plaintiff's compromised immune system, fatigue, and susceptibility to infection, reflect Defendant's recognition of Plaintiff as a person with a known disability and obvious accommodation-related need.

31. Despite this notice, HISD did not engage in a meaningful, good-faith interactive process to identify and implement an effective reasonable accommodation tailored to Plaintiff's known limitations. Plaintiff's limitations and the kinds of accommodations they reasonably implicated, including a more stable assignment structure, reduced movement between multiple campus locations, floors, and outdoor portables, reduced close-proximity exposure to large groups of students consistent with his compromised immune system, and predictability in evaluation timing and process were objectively obvious to HISD in light of Plaintiff's cancer diagnosis, his ongoing treatment, his hospitalizations, and his repeated communications to campus leadership regarding the impact of his working conditions on his health. HISD did not propose, discuss, or provide any such accommodation.

32. Instead, Plaintiff was assigned physically and mentally taxing duties while undergoing active medical treatment, including movement between multiple locations, travel outside

to retrieve students from portables, movement between floors, and coverage across multiple grade levels without adequate transition time. Plaintiff's schedule was changed at least four times during the relevant period, but the changes did not provide a stable or effective accommodation for his known limitations.

33.    Plaintiff communicated to campus leadership, including Principal Dimandja, that the working conditions were causing significant stress and placing his health at risk.

34.    On or around February 13, 2025, Plaintiff met with Principal Dimandja and shared concerns regarding unclear expectations, the SPOT evaluation process, and that he was being targeted. Later that same day, the Special Education team and the administrative team held a meeting to discuss the concerns Plaintiff had raised. Plaintiff was excluded from that meeting.

35.    On or around February 14, 2025, Principal Dimandja announced new campus-level Special Education processes and procedures, including a sign-in/sign-out protocol for inclusion staff. The protocol was applied to Plaintiff but was not applied to dyslexia staff, who also fall under Special Education.

36.    Plaintiff's pre-approved Reading by Design dyslexia training, which was a multi-day series and a prerequisite for providing dyslexia instruction, was disrupted around February 26, 2025, when Plaintiff was directed to return to campus during a scheduled training day. The district dyslexia coordinator confirmed that if Plaintiff did not complete the training as scheduled, there would be no additional opportunities to complete the required series that school year. Plaintiff's two Special Education colleagues had already completed this training.

37. Plaintiff's Mid-Year evaluation process was accelerated. Although Principal Dimandja informed Plaintiff that the evaluation was not due until around February 28, 2025 and that supporting documentation could be submitted, around February 26, 2025 the evaluation was closed at approximately 5:15 p.m., shortly after Plaintiff emailed additional supporting documentation and copied his union representative.

38. On or around March 21, 2025, an Assistant Principal at another HISD high school expressed interest in hiring Plaintiff for the upcoming school year and requested Plaintiff's Mid-Year evaluation. After Plaintiff disclosed that his Mid-Year evaluation included a "Developing" rating, the Assistant Principal informed Plaintiff that the rating would prevent his application from advancing through HR. Plaintiff received no further communication regarding that opportunity.

39. On or around March 4, 2025, Plaintiff filed a Level I Grievance against Principal Dimandja and Assistant Principal Colion-Hernandez.

40. On or around June 27, 2025, Plaintiff resigned his employment with HISD, because the cumulative effect of Defendant's conduct made his working conditions intolerable. A reasonable person in Plaintiff's position, undergoing active medical treatment for a serious health condition with known limitations, would have felt compelled to resign under these conditions.

## V. CAUSE OF ACTION NO. 1

**FMLA RETALIATION (29 U.S.C. § 2615)**

41. Plaintiff incorporates all preceding allegations as if fully set forth herein.

42. At all relevant times, Defendant was an employer within the meaning of the FMLA, 29 U.S.C. § 2611(4), and Plaintiff was an eligible employee within the meaning of the FMLA, 29 U.S.C. § 2611(2).

43. Plaintiff engaged in protected activity under the FMLA, including by:

    a. taking continuous FMLA leave from on or around October 7, 2024 through on or around January 17, 2025;

    b. filing for intermittent FMLA leave on or around January 16, 2025 and securing extended FMLA leave on or around January 22, 2025; and

    c. taking additional FMLA and temporary disability leave on or around March 4, 2025 through the end of the 2024–2025 school year.

44. Defendant had actual knowledge of each instance of Plaintiff's protected FMLA activity.

45. Following and in close temporal proximity to Plaintiff's protected FMLA activity, Defendant subjected Plaintiff to materially adverse treatment, including but not limited to:

    a. issuing repeated and unstable schedule changes that increased Plaintiff's student-facing exposure;

    b. conducting repeated SPOT observations in close succession with declining scores following Plaintiff's intermittent-FMLA filing;

    c. applying a sign-in/sign-out protocol to Plaintiff but not to similarly situated dyslexia staff within the same Special Education department;

    d. excluding Plaintiff from a same-day meeting held to discuss concerns Plaintiff had just raised;

    e. disrupting Plaintiff's pre-approved Reading by Design dyslexia training, a credentialing prerequisite that his colleagues had already completed and that the district dyslexia coordinator confirmed could not be rescheduled that school year;

f.  accelerating and closing Plaintiff's Mid-Year evaluation in a manner that produced a "Developing" rating, which directly impaired Plaintiff's eligibility for internal mobility and outside placement; and

g.  creating working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign, culminating in Plaintiff's constructive discharge on or around June 27, 2025.

46. Plaintiff's resignation constitutes a constructive discharge because a reasonable person in Plaintiff's position, undergoing active medical treatment for a serious health condition with known limitations, would have felt compelled to resign under the working conditions Defendant maintained or imposed.

47. The timing and sequence of Defendant's actions — including the issuance of two new schedules and a lower SPOT observation within approximately ten days of Plaintiff's intermittent-FMLA filing on or around January 16, 2025 — support a plausible causal connection between Plaintiff's protected FMLA activity and Defendant's conduct.

48. Defendant's conduct constitutes unlawful retaliation in violation of the FMLA, 29 U.S.C. § 2615.

49. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including lost wages, lost benefits, and seeks all relief available under the FMLA, including damages, equitable relief where appropriate, liquidated damages as allowed by law, attorneys' fees, costs, and interest.

## VI. CAUSE OF ACTION NO. 2

**FAILURE TO ACCOMMODATE AND FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF THE ADA (42 U.S.C. § 12101 et seq.)**

50.    Plaintiff incorporates all preceding allegations as if fully set forth herein.

51.    At all relevant times, Defendant was an employer within the meaning of the ADA, 42 U.S.C. § 12111(5), and Plaintiff was a qualified individual with a disability within the meaning of the ADA.

52.    Plaintiff was able to perform the essential functions of his position with or without reasonable accommodation.

53.    Plaintiff's limitations during the relevant period, including a compromised immune system, increased susceptibility to infection, fatigue, and the need to limit close-proximity exposure to large groups of students, were known to Defendant and were objectively obvious in light of Plaintiff's cancer diagnosis, his ongoing treatment at a specialized cancer treatment center, his hospitalizations, and his contemporaneous communications to Defendant's personnel.

54.    Defendant had notice of Plaintiff's disability, medical treatment, functional limitations, and accommodation-related need through, among other things:

    a.    Plaintiff's approved continuous FMLA leave from on or around October 7, 2024 through on or around January 17, 2025;

    b.    Defendant's transmission of ADA accommodation-process information to Plaintiff on or around November 7, 2024, while Plaintiff remained on approved FMLA leave;

c.  Plaintiff's in-person disclosure of his medical condition to Principal Dimandja upon his return to work on or around December 16, 2024;

d.  Plaintiff's disclosures in or around December 2024 to Department Chair Ms. Kasoga regarding his compromised immune system and susceptibility to infection;

e.  Plaintiff's continuing communications throughout January 2025 regarding his ongoing treatment, compromised immune system, fatigue, and need to limit close-proximity exposure to students;

f.  Plaintiff's intermittent-FMLA filing on or around January 16, 2025 and FMLA extension on or around January 22, 2025; and

g.  the email from Defendant's own ADA office on or around January 31, 2025, copying Principal Dimandja, and Principal Dimandja's same-day communication that she had contacted HR Leave Administration regarding Plaintiff's medical situation. Principal Dimandja, in her communication that day to HR Leave Administration, told HR that Plaintiff had said he could not work with students. Plaintiff had not made that statement and immediately denied it.

55.  Reasonable accommodations that were apparent from, and reasonably implicated by, Plaintiff's known and objectively obvious limitations included a stable assignment structure, reduced movement between multiple campus locations, floors, and outdoor portables, reduced close-proximity exposure to large groups of students consistent with Plaintiff's compromised immune system, and predictability in evaluation timing and process.

56.  Despite Defendant's notice of Plaintiff's disability and accommodation-related need, and the objective obviousness of Plaintiff's limitations, Defendant failed to engage in a

meaningful, good-faith interactive process and failed to provide an effective reasonable accommodation. Instead, Defendant maintained or imposed working conditions that were incompatible with Plaintiff's known limitations, including repeated and unstable schedule changes, increased student-facing exposure, and required movement among multiple campus locations, floors, and outdoor portables, while Plaintiff was undergoing active medical treatment.

57. Defendant's conduct violated the ADA's prohibition against failure to accommodate and failure to engage in the interactive process.

58. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and seeks all relief available under the ADA, including equitable relief, compensatory damages as permitted by law, attorneys' fees, costs, and interest.

## VII. CAUSE OF ACTION NO. 3

**ADA RETALIATION (42 U.S.C. § 12203)**

59. Plaintiff incorporates all preceding allegations as if fully set forth herein.

60. The ADA prohibits retaliation against an individual who opposes discriminatory practices or engages in disability-related protected activity. 42 U.S.C. § 12203(a).

61. Plaintiff engaged in protected activity under the ADA, including by disclosing his disability and limitations to Principal Dimandja and Ms. Kasoga, participating in ADA-related communications with Principal Dimandja and Defendant's ADA office on or around January 31, 2025, raising concerns regarding his treatment and being targeted in his meeting with Principal Dimandja on or around February 13, 2025, filing the Level I Grievance on or around March 4, 2025, and continuing accommodation-related communications throughout the relevant period.

62. Defendant had actual knowledge of Plaintiff's protected activity.

63. Following and in close temporal proximity to Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse treatment, including the conduct described in Paragraph 45 above, which is incorporated by reference.

64. The timing and sequence of these actions support a plausible causal connection between Plaintiff's protected activity and Defendant's conduct.

65. Defendant's conduct would dissuade a reasonable employee from engaging in protected activity and constitutes unlawful retaliation in violation of the ADA, 42 U.S.C. § 12203.

66. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and seeks all relief available under the ADA, including equitable relief, compensatory damages as permitted by law, attorneys' fees, costs, and interest.

## VIII. CAUSE OF ACTION NO. 4

**DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. § 794)**

67. Plaintiff incorporates all preceding allegations as if fully set forth herein.

68. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits any program or activity receiving federal financial assistance from excluding from participation, denying the benefits of, or subjecting to discrimination any otherwise qualified individual with a disability solely by reason of his or her disability. Section 504 likewise prohibits retaliation against any individual who opposes practices made unlawful by Section 504 or who otherwise engages in disability-related protected activity. See 29 U.S.C. § 794a; 34 C.F.R. § 100.7(e).

69.    At all relevant times, Defendant was a recipient of federal financial assistance, and was therefore subject to Section 504.

70.    At all relevant times, Plaintiff was an otherwise qualified individual with a disability within the meaning of Section 504, capable of performing the essential functions of his position with or without reasonable accommodation.

71.    Defendant had notice of Plaintiff's disability, medical treatment, functional limitations, and accommodation-related need, as set forth in Paragraph 54 above and incorporated by reference. Defendant nonetheless failed to engage in a meaningful, good-faith interactive process and failed to provide an effective reasonable accommodation for Plaintiff's known and objectively obvious limitations.

72.    Following and in close temporal proximity to Plaintiff's protected activity, including his disclosures of disability, his participation in ADA and accommodation-related communications, and his filing of internal complaints and the March 4, 2025 Level I Grievance, Defendant subjected Plaintiff to materially adverse treatment, including the conduct described in Paragraph 45 above, which is incorporated by reference.

73.    Defendant's conduct constitutes unlawful disability discrimination, failure to accommodate, failure to engage in the interactive process, and retaliation in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

74.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and seeks all relief available under Section 504, including equitable relief, compensatory damages as permitted by law, restoration of benefits, back pay, front pay, attorneys' fees, costs, and interest.

### IX. CAUSE OF ACTION NO. 5

**DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION IN VIOLATION OF THE TCHRA (Tex. Lab. Code § 21.001 et seq.)**

75. Plaintiff incorporates all preceding allegations as if fully set forth herein.

76. At all relevant times, Defendant was an employer within the meaning of the TCHRA, Tex. Lab. Code § 21.002(8), and Plaintiff was a qualified individual with a disability within the meaning of the TCHRA.

77. The TCHRA prohibits discrimination because of disability in the terms, conditions, and privileges of employment, requires reasonable accommodation for known limitations of an otherwise qualified individual with a disability unless doing so would impose an undue hardship, and prohibits retaliation against an employee who opposes a discriminatory practice or otherwise engages in protected activity.

78. Defendant had notice of Plaintiff's disability and accommodation-related need, as set forth above.

79. Defendant subjected Plaintiff to adverse treatment because of his disability, failed to provide an effective reasonable accommodation and failed to engage in a meaningful interactive process, and retaliated against Plaintiff for his protected activity, all as described above.

80. Defendant's conduct violated the TCHRA, including Tex. Lab. Code §§ 21.051, 21.128, and 21.055.

81. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and seeks all relief available under the TCHRA, including equitable relief, compensatory damages as permitted by law, attorneys' fees, costs, and interest.

## X. RESPONDEAT SUPERIOR AND RATIFICATION

82. Whenever in this Complaint it is alleged that Defendant did any act or thing, it is meant that Defendant's officers, agents, servants, employees, or representatives did such act or thing, and that at the time such act was done, it was done with the full authorization or ratification of Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives, in their individual and official capacities.

## XI. DAMAGES

83. As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back pay, front pay, lost earnings, lost employment benefits including the disruption of health insurance and other benefits during a period of active medical treatment, and impaired professional standing and career trajectory. Plaintiff has also suffered non-economic damages, including emotional distress, mental anguish, humiliation, inconvenience, and other compensable injuries to the extent allowed by law.

84. Plaintiff has mitigated, and will continue to mitigate, his damages as required by law.

## XII. ATTORNEYS' FEES AND COSTS

85. Plaintiff is entitled to an award of attorneys' fees and costs pursuant to the FMLA, 29 U.S.C. § 2617, the ADA, 42 U.S.C. § 12205, the Rehabilitation Act, 29 U.S.C. § 794a(b), and the TCHRA, Tex. Lab. Code § 21.259.

## XIII. JURY DEMAND

86. Plaintiff requests a trial by jury on all issues triable to a jury.

## XIV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that upon final trial, judgment be entered for Plaintiff against Defendant. Plaintiff seeks all relief available under the FMLA, the ADA, Section 504 of the Rehabilitation Act, and the TCHRA, including:

a. Actual and consequential damages, including back pay, lost wages, lost benefits, and lost earning capacity;

b. Compensatory damages, including emotional distress, mental anguish, humiliation, and embarrassment, where permitted by law;

c. Equitable relief, including reinstatement or, in the alternative, front pay where appropriate, and restoration of benefits;

d. Liquidated damages as provided by law on Plaintiff's FMLA claim;

e. Declaratory relief that Defendant's conduct violated the FMLA, the ADA, Section 504 of the Rehabilitation Act, and the TCHRA;

f. Reasonable attorneys' fees and costs under the FMLA, the ADA, Section 504 of the Rehabilitation Act, and the TCHRA;

g. Pre-judgment interest as allowed by law;

h. Post-judgment interest as allowed by law; and

i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

**[SIGNATURE BLOCK CONTINUED ON FOLLOWING PAGE]**

Respectfully submitted,

*/s/ Lisa Ventress*
Lisa Ventress
Federal Bar No. 3471199
Texas Bar No. 24076751
The Ventress Firm, P.C.
1322 Space Park Dr., Ste. C116
Houston, TX 77058
Telephone: (832) 240-4365
Email: lisa@theventressfirm.com

**ATTORNEY FOR PLAINTIFF**